COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Richard C. Wootton (SBN 88390)
Courtney M. Crawford (SBN 242567)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

Attorneys for Defendants
Cross Link, Inc., dba Westar Marine Services,
Taurus Marine Inc. and the M/V RANGER,
and her engines, tackle, apparel, etc. in rem

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE A. McGREGOR,<br><br>Plaintiff,<br><br>v.<br><br>CROSS LINK INC., dba WESTAR MARINE SERVICES, TAURUS MARINE INC. and DOES 1 through 10, inclusive, in personam, and M/V RANGER, and her engines, tackle, apparel, etc., in rem,<br><br>Defendants. | Case No.: CV-08-5001 SC<br><br>SUPPLEMENTAL - REBUTTAL DECLARATION OF CAPTAIN R. RUSSELL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO 46 CFR 183.430<br><br>Trial Date: June 25, 2010<br>Time: 9:30 a.m.<br>Courtroom 1, 17th Fl.<br>Honorable Samuel Conti |

I, Captain R. Russell Johnson, declare:

1. I have been asked by Richard Wootton, counsel for defendants, to respond to the contention of plaintiff and his experts that 46 CFR §183.430 applied to the work aboard the M/V RANGER at the time of plaintiff's accident. If the Court permits evidence concerning applicability of this section at the time of trial, this Declaration will supplement my earlier Rule 26 expert report.

2. I currently hold a 1600 ton Master Oceans license with an endorsement as Master of Towing Vessels which I have held continuously for 35 years. I am particularly familiar with San Francisco Bay. From 1984 until 1987 I was the Operations Manager for Harbor

Tug and Barge. From 1987 until 1990 I was the General Manager of the Red and White Fleet. Both were maritime companies located in San Francisco Bay. Harbor Tug and Barge specialized in maritime towing and construction operations and the Red and White Fleet operated a ferry and crew boat service. In my managerial capacity I became very familiar with the types of operations performed by Westar Marine Services. In 1994 I started working for Dunlap Towing Co. and remain there today, as Director of Safety, Training, and Regulatory Compliance. In this capacity I have been responsible for implementing the International Safety Management System which is the recognized and often required system of the International Maritime Organization. In 2004 I received internal auditor training qualifying me to perform ISM internal audits for my company. I am also responsible to insure that the company operates within the guidelines of the Responsible Carrier program of the American Waterway Operators.

3. I have previously reviewed the facts of this case and prepared an expert witness report. I have also reviewed the following documents concerning the contention that 46 § CFR §183.430 applies to the work being performed on the RANGER on the night of the accident:

(a) Defendants' Motion in Limine No. 10 to Exclude Reference to 46 CFR § 183.430;
a) Plaintiff's Opposition to Defendants' Motion in Limine No. 10.;
b) Declaration of Captain Joseph Derie in Opposition;
c) Declaration of Mitchell Stoller in Opposition;
d) 46 CFR § 183.430;
e) 46 CFR § 176.114; and
f) Certificate of Inspection of the M/V Ranger

4. Based on my experience, knowledge of the facts and review of the above mentioned documents, it is my opinion that 46 CFR §183.430 did not apply to the work being performed at the time of the accident, nor did 46 CFR § 176.114. Vessel safety regulations and Certificates of Inspection are meant to safeguard vessels when they are manned, underway and operating in their intended and declared purpose. At the time of the accident,

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP
190 THE EMBARCADERO SAN FRANCISCO, CA 94105
TEL: 415-438-4600
FAX: 415-438-4601

IMU.McGregor/2585

-2-    Case No.: CV-08-5001 SC
DECLARATION OF CAPTAIN R. RUSSELL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO 46 CFR 183.430

the M/V Ranger was undergoing a maintenance period - it was not operating, manned, or carrying passengers.

5. The facts are undisputed that at the time of the accident, the M/V RANGER was laid up for a maintenance period in anticipation of a Coast Guard inspection to renew her Certificate of Inspection. Captain Bertkins and Mr. McGregor were not operating the vessel as crewmembers in her intended service, they were performing maintenance work to prepare her for the Coast Guard Inspection. Part of the preparation for an inspection involves checking all the safety systems on the vessel, including life jackets, life floats, ring buoys, fire extinguishers, and fire pumps, etc. If any of these safety items were missing or beyond the service date, it was their job to correct that deficiency and insure that the vessel passed the Coast Guard inspection. This is a normal process that I have overseen many times and its express purpose is to ensure that no safety items have been overlooked.

6. In my experience, when a vessel is laid up for maintenance, it may be out of compliance in many respects with regulations which apply when it is operating at sea in its intended purpose. For example, life rafts may be taken ashore for servicing; fire fighting systems may be out of date and $CO_2$ bottles taken ashore for hydro testing, weighing, and filling; life jackets in need of replacement may have been removed from the vessel; and main engines and generators may be torn down and inoperative. To assert that "Once a vessel is certified by the Coast Guard to operate as a commercial passenger vessel, the vessel must remain equipped and in compliance with the applicable regulations as long as its certificate is valid" (Plaintiff's Opposition to Defendants' Motion) is simply untrue. The vessel only needs to be in compliance with regulations governing its operation when it is indeed "operating" in the manner required by its Certificate of Inspection.

7. Captain Joseph Derie states in his declaration (Page 2) that "Portable lights are required to be carried by the M/V Ranger, an inspected passenger vessel, in accordance with 46 CFR § 183.430". He then asserts that a vessel operating under 46 CFR §176.114 must: "not alter the arrangement of the vessel nor remove any equipment required by the

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP
190 THE EMBARCADERO SAN FRANCISCO, CA 94105
TEL: 415-438-4600
FAX: 415-438-4601

IMU.McGregor/2585

-3- Case No.: CV-08-5001 SC
DECLARATION OF CAPTAIN R. RUSSELL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO 46 CFR 183.430

certificate for the intended operation without the consent of the cognizant OCMI." The key words in this provision are **"intended operation."** At the time of the accident, the RANGER was obviously not performing its intended operation of transporting passengers with a crew aboard. It was moored and undergoing maintenance.

8. Mr. Stoller makes the same statement in his declaration (page 2) that "When a vessel has been inspected and certificated to carry passengers for hire, the vessel must remain equipped and in compliance". He continues with footnotes that states: "A certificate of inspection (COI) certifies that the vessel has been inspected by the Coast Guard and that it is in conformance with the applicable vessel inspection laws and regulations; it also sets forth the conditions under which the vessel may operate." Again the key word is **"operate."** The RANGER was not operating while it was undergoing repair and preparation for the Coast Guard inspection.

9. Captain Derie and Mr. Stoller cite the Certificate of Inspection as the document that states the conditions and equipment requirements for the M/V RANGER. The RANGER's Certificate of Inspection states that the vessel is in conformity with the applicable vessel inspection laws and the rules under the provisions of 46 CFR § 176.114. I see no reference on the Certificate to the requirement of 46 CFR § 183.430 for carrying two portable lights. In fact the Certificate states specifically what safety equipment is required:

- One approved child-size life preserver for each person on board weighing less than 90 pounds.
- 2 Life Floats/Buoyant Apparatus.
- 52 Life Preservers (adult)
- 6 Life Preservers (child)
- 1 Ring buoy, with lights and line attached

There is no mention of two portable lights being required in the Certificate of Inspection.

10. In my opinion, the reference to 46 CFR § 183.430 in the circumstances of this case is a classic "red herring". At the time of the accident, the RANGER was well lit utilizing

-4- Case No.: CV-08-5001 SC
DECLARATION OF CAPTAIN R. RUSSELL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO 46 CFR 183.430

power from the adjacent vessel and portable lights. Mr. McGregor had his own flashlight. They were already using the vessels 24 volt light system to work in the engine compartment. Mr. McGregor chose not to turn on the 24 volt lights in the passenger cabin that would have further illuminated the area he was working in. McGregor fell into an open hatch that he had just exited a mere two minutes earlier. He should have known that he had left the hatch open but apparently forgot. He simply forgot.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct and if called as a witness I could so testify to the facts contained in this declaration.

Executed this 18th day of June, 2010 in Lopez Island, Washington.

By: _____

Captain R. Russell Johnson

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

IMJ.McGregor/2585

-5-   Case No.: CV-08-5001 SC
DECLARATION OF CAPTAIN R. RUSSELL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 10 TO EXCLUDE REFERENCE TO 46 CFR 183.430